**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HARRIS COUNTY DEPARTMENT OF EDUCATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-2190 |
| | § | |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| | § | |
| HARRIS COUNTY DEMOCRATIC | § | |
| PARTY, *et al.*, | § | |
| | § | |
| Intervenors. | § | |

**MEMORANDUM AND OPINION**

This case arises out of the May 2012 primary election for an open seat on the Harris County Department of Education (HCDE) Board of Trustees.  The election was conducted under an incorrect election map.  The plaintiff, the HCDE, asks this court to issue a declaratory judgment finding the May 2012 primary election for trustee Position 6, and the subsequent July 2012 runoff, void, and to issue a preliminary injunction requiring a special election to be held on the same November date as the general election.  In this special election, "candidates from all parties" would run against each other for the position.  The defendants, Harris County, Texas and County officials involved in conducting the election — sued only in their official capacity — move to dismiss, asserting a number of jurisdictional and other defects.

The Harris County Democratic Party moved to intervene, which this court granted.  The Harris County Republican Party has also moved to intervene.  Both the Republican and Democratic Parties move to dismiss the suit, agreeing that this federal court has no basis to intervene in the

general election for the disputed trustee position and that to do so would infringe the parties' right to select their own party candidates. Two individuals also seek to intervene: Erica Lee, who won the Democratic primary for Position 6, and who joins in the arguments for dismissal; and Joseph Ballard, a voter in one of the affected precincts.

This court held a hearing and heard argument. Based on a careful review of the pleadings; the motions, responses, and replies; the record; the arguments of counsel; and the applicable law, this court:

- grants the motions to intervene filed by Erica Lee and the Republican Party, (Docket Entry Nos. 17, 18);

- grants the motions to dismiss filed by the Democratic Party, the Harris County Defendants, and the Republican Party, (Docket Entry Nos. 13-1, 14, 19);

- denies the Democratic Party's separate motion to dismiss for mootness, (Docket Entry No. 27);

- denies Joseph Ballard's motion to intervene, (Docket Entry No. 25); and

- denies the HCDE's application for a preliminary injunction, (Docket Entry No. 7).

This case is dismissed by separate order. The reasons for these rulings are set out below.

## I.     Background and Procedural History

On August 5, 2011, a group of Hispanic voters sued Harris County, Texas and the Harris County Commissioners Court Judge, Ed Emmett, alleging that a proposed redistricting plan for the Harris County Commissioners Court violated the Equal Protection Clause of the Fourteenth Amendment and Sections 2 and 5 of the Voting Rights Act, 42 U.S.C. §§ 1973, 1973c. In *Rodriguez v. Harris County*, No. 4:11-cv-02907 (S.D. Tex. filed Aug. 5, 2011), the plaintiffs charged that Harris County's proposed map diluted the influence of the rapidly growing Hispanic community and that, despite its status as a Section 5-covered jurisdiction, Harris County had failed to preclear its

redistricting plan.  In response, Harris County proposed to use its existing plan, which was drawn in 2001 based on the 2000 census, for the upcoming 2012 election.  In *Rodriguez*, a different judge in this district found that using the 2001 plan would be unconstitutional and ordered Harris County to use an interim plan for the 2012 election.  (Docket Entry 12, Exs. A, B (*Rodriguez*, No. 4:11-cv-02907 (S.D. Tex. Nov. 19, 2011)).

The HCDE Board has seven members.  Three are elected at large.  Four are elected from precincts that correspond to the Harris County Commissioner precincts.  *See* TEX. EDUC. CODE § 17.02(b).  In 2012, HCDE trustee Positions 3, 4, and 6 are up for election.  The party primaries for these positions were held on May 29, 2012.  (Docket Entry No. 12 at 3).  Position 3 is at-large. Positions 4 and 6 are precinct-based.

The court-order interim map in the *Rodriguez* suit changed the lines for the two County Commissioners precincts that correspond to the precincts for HCDE trustee Positions 4 and 6. Harris County is responsible for conducting the elections for the HCDE trustees because they hold a county office.  The Harris County Tax Assessor-Collector is responsible for updating the County Commissioner precinct boundaries for elections.  (*Id.*).  In what all apparently view as an inadvertent mistake, that office failed to update the HCDE precinct boundaries to correspond with the *Rodriguez* court-ordered interim Harris County Commissioner election map.[1]  As a result, the ballots for the May 2012 primary were printed incorrectly and went to precincts that used the 2001 precinct

-------------------

[1]The parties concede the mistake may have been inadvertent while disputing who is to blame for the fact that it occurred.  According to the HCDE, "Defendant Harris County is responsible for notifying the Harris County Tax Assessor Collector of new county commissioner precinct boundary lines as required by Texas Election Code § 42.0615."  (*Id.* at 3).  On the other hand, the defendants claim that "the plaintiff had a legal obligation to inform the Harris County Tax Assessor-Collector that their district boundary lines had changed."  (Docket Entry No. 14 at 2).  It is unnecessary to resolve this dispute.

boundary lines for the primary election of trustee Positions 4 and 6.  (*Id.* at 4).

The error made no difference in the races for one of the two precinct-based trustee positions. The outcome of the Position 4 primary would have been the same under either the 2001 map that should not have been used or the court-ordered interim map that all parties agree should have been used.  The Democratic candidate for Position 4 was unopposed.  The Position 4 Republican Primary race was contested but unaffected by the map error.   (*Id.* at 5).  The error resulted in more than 34,000 registered voters who did not reside within the correctly drawn precinct being given the opportunity to vote.   Because fewer than 1,500 improper votes were cast, far below the approximately 21,000 vote difference between the candidates, the use of the incorrect map made no difference.  (*Id.*, Ex. C at 2).

The Position 6 primary race for the Republican candidate was also unaffected by the use of the wrong map.  The Republican candidate for Position 6 ran unopposed in the primary.  The only race in which the map used could — not would — have made a difference is the Democratic primary race for Position 6.  In that race, candidates Reagan Flowers, Jarvis Johnson, and Erica Lee ran for the Democratic nomination.   There were 872 individuals voting in the Position 6 Democratic primary who lived outside the properly drawn precinct boundaries, and 1,396 registered voters who lived inside the properly drawn precinct but who were denied the opportunity to vote in that primary. (*Id.* at 2).  Jarvis Johnson received 49.48 percent of the votes, fewer than 400 votes shy of a majority.  (Docket Entry No. 12, Ex. C at 4).  The main challenger, Erica Lee, received 40.55 percent of the vote.  (*Id.*).

On July 31, 2012, the Democratic party runoff took place between Johnson and Lee, using the proper, court-ordered interim map.  Jarvis Johnson lost by a wide margin. Erica Lee received almost 75 percent of the vote.  It is mathematically possible — not probable — that, had the correct

map been used in the May 31 primary, Johnson would have received the majority needed to win the primary outright, obviating the need for the July runoff that he lost.  That mathematical possibility gave rise to this suit.

On July 7, 2012, the Harris County Department of Education filed this suit against Harris County, Texas and two individuals sued in their official capacity: Stan Stanart, Harris County Clerk; and Don Sumners, Harris County Tax Assessor-Collector.  The suit alleged that the defendants had violated the Fourteenth Amendment's Equal Protection Clause, 42 U.S.C. § 1983, and Section 5 of the Voting Rights Act by using the incorrect map for the HCDE primary election.  (Docket Entry No. 1).  On July 26, 2012, the HCDE applied for a temporary restraining order and preliminary injunction and requested an emergency hearing.  (Docket Entry No. 7).  The HCDE requested that this court:

> (1) "[D]eclare the May 29, 2012 primary election for HCDE trustee Positions 4 and 6 and the July 31, 2012 Democratic run-off election for HCDE trustee Position 6 based on the May 29, 2012 primary election void," (Docket Entry No. 7 at 11), and;

> (2) "[O]rder a special election to be held in conjunction with the general election in November 2012 for HCDE trustee Positions 4 and 6, with candidates from all parties running against one another, using the commissioner precinct boundaries ordered by Judge Vanessa Gilmore [in *Rodriguez v. Harris County*] on November 19 and 23, 2011," (*Id.*).

On July 22, 2012, the HCDE filed a second amended complaint seeking the same relief that it identified in its preliminary injunction application but deleting its claim under Section 5 of the Voting Rights Act.  (Docket Entry No. 12).

On July 30, 2012, the Harris County Defendants (Harris County and the two officials sued in their official capacity) moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), (6), and (7).  The Harris County Defendants argued that the HCDE lacked standing to sue another political subdivision to enforce a federal right that had not been intentionally violated; failed to plead a basis

5

for liability under § 1983; failed to name indispensable parties; and incorrectly sued both Harris County and its officers in their official capacity.  (Docket Entry No. 12).

On the same date, the Harris County Democratic Party and its chair, Lane Lewis, moved to intervene.  (Docket Entry No. 13).  The Democratic Party also filed a motion to dismiss and, in the event that was denied, a motion to transfer the case to the judge handling the *Rodriguez* case. (Docket Entry No. 13-1).  The Democratic Party argued a number of grounds for dismissal, including that the HCDE lacks standing because it has no right to control the selection of party nominees and the HCDE failed to state a federal claim; the HCDE failed to join necessary parties by not suing the Democratic and Republican Parties and each affected candidate; this court lacks jurisdiction to grant the relief the HCDE seeks because that relief would implicate Section 5 of the Voting Rights Act and require preclearance or consideration by a three-judge panel; and the availability of state-law remedies in the form of election-contest claims supports abstention by this federal court.  (*Id.*).

On July 30, this court held a hearing on the HCDE's application for a temporary restraining order enjoining the July 31 primary election runoff.  At the hearing, the HCDE withdrew that application, agreeing to hold the runoff under the *Rodriguez* court-ordered interim map.  (Docket Entry No. 16).  This court granted the Democratic Party's motion to intervene, (Docket Entry No. 13).  This court also set an August 6 deadline for other motions to intervene.  (Docket Entry No. 16). On August 3, Erica Lee, who won the Democratic Party runoff for Position 6, filed a motion to intervene and adopted the Democratic Party's motion to dismiss.  (Docket Entry No. 17).  On the same day, the Harris County Republican Party filed a motion to intervene, (Docket Entry No. 18), with a motion to dismiss based on grounds similar to those asserted in the Democratic Party's

motion to dismiss.  (Docket Entry No. 19).[2]

On August 8, the HCDE filed a response to the motions to dismiss filed by Harris County and the Democratic Party and Republican Parties, and joined in by Erica Lee.  (Docket Entry No. 21).  Among other things, the HCDE argues that it has standing to protect voters' rights, emphasizing that the primary was conducted under a map that has been found unconstitutional.  The HCDE also argues that it has standing to avoid later challenges to its own actions on the ground that its board was improperly elected.  (*Id.* at 5).

On August 16, Joseph Ballard, a voter in the primary for the HCDE trustee Position 6, filed a motion to intervene.  (Docket Entry No. 25).  Ballard did not file a pleading or motion other than the motion to intervene.  His motion is denied because it was untimely filed and is moot as a result of this court's ruling on the dismissal motions.

On August 28, 2012, the Democratic Party filed an additional motion to dismiss based on mootness.  (Docket Entry No. 27).  The Democratic Party asserts that, because the HCDE seeks to hold Erica Lee's nomination invalid, the Democratic Party is authorized under § 145.037 of the Texas Election Code, to appoint a replacement nominee.  The Democratic Party appointed Erica Lee as its replacement nominee.  (Docket Entry No. 27).  In response, the HCDE alleges that the Democratic Party's appointment was improper because the present suit does not seek to declare Erica Lee ineligible.  (Docket Entry No. 29).

The arguments on the motions to dismiss are analyzed below.

---

[2] The Democratic Party included in its motion a request that if this court did not dismiss the HCDE's suit, it should in the alternative be transferred to the court handling the Rodriguez case.  (Docket Entry No. 13).  The Republican Party did not seek this relief as part of its motion to dismiss. (Docket Entry No. 19).  On August 6, the Harris County Defendants filed an opposition to the Democratic Party's alternative motion to transfer, alleging that the issues at stake in the present case are not substantially related to those in the *Rodriguez* case pending in front of the three-judge district court.  (Docket Entry No. 20).  Because this court grants the motions to dismiss, the motion to transfer is moot.

## II.     The Motions to Dismiss

### A.     The Applicable Legal Standards

Rule 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). "[T]he standard of Rule 12(b)(1) . . . while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion." *Williams v. Wynne*, 533 F.3d 360, 365 n. 2 (5th Cir. 2008).   A court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).   As a general rule, the plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.   *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails "to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id*. (quoting *Twombly*, 550 U.S. at 555).   "A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation omitted).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). A plaintiff should be denied leave to amend if the court determines that "the proposed change . . . advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed.1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when dismissing a motion to amend that is . . . futile.").

### B.        Standing and Failure to State a Claim

The defendants and intervenors move to dismiss on the basis that the HCDE lacks standing and has no claim. There appear to be two arguments raised in the motions. The first is that, as a state-created political subdivision, the HCDE lacks standing to sue another political subdivision under § 1983. The parties do not develop this argument.[3] Instead, the parties focus on the second

---

[3] In *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that "municipalities and other local government units" are persons who may be sued under § 1983. Courts have since questioned when one governmental subdivision may sue another under § 1983. *See City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 368 (S.D.N.Y. 2000) ("Congress intended Section 1983 to provide private citizens with a remedy against state action. It would run counter to that intent to allow a governmental subdivision to sue another governmental subdivision for damages under Section 1983."); *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 722 (N.D. Ill. 1996) (holding that municipalities are not persons for the purpose of suing under § 1983 because the statute's purpose is "the vindication of individual interests against state action"). Precedents in both the Fifth Circuit and in other courts suggest that a political subdivision's authority to sue another political subdivision under § 1983 is limited and may depend on the constitutional claim asserted. *See Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049, 1051 n. 1 (5th Cir. 1984) ("Being but creatures of the State, municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator."); *Rogers v. Brockette*, 588 F.2d 1057, 1068 (5th Cir. 1979), *cert. denied*, 444 U.S. 827 (1979) ("[T]hese cases are substantive interpretations of the constitutional provisions involved; we do not think they hold that a municipality never has standing to sue

argument, that the HCDE lacks a cognizable claim for a violation of constitutionally protected rights.  This argument is properly analyzed under Rule 12(b)(6).

The parties agree that Harris County's role in the primary election at issue was to administer it.  The HCDE alleges that in doing so, the Harris County Defendants violated 42 U.S.C. § 1983[4] and the Fourteenth Amendment's one-person, one-vote requirement "[b]y using the 2001 unconstitutional commissioner precinct boundaries for the HCDE trustee elections" and causing "some voters' votes to be over-weighted and some to be diluted."  (Docket Entry No. 12 at 7).  The HCDE alleges that Harris County, "acting under color of state law, failed to hold the 2012 HCDE trustee primary elections for positions 4 and 6 within constitutionally permissible boundaries, thereby depriving voters of rights secured to them by the U.S. Constitution . . . [and] section 1983 of the Civil Rights Act."  (*Id.*).  The Harris County Defendants and the Democratic and Republican

_____

the state."); *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 449 U.S. 1039, 1042 (1980) (White, J., dissenting from denial of *certiorari*) (asserting that a *per se* rule prohibiting a political subdivision from raising constitutional objections to a state statute was inconsistent with *Board of Education v. Allen*, 392 U.S. 236 (1968)). In *City of Herriman v. Bell*, 590 F.3d 1176 (10th Cir. 2010), a city intervened in an equal protection challenge to a state statute permitting a city to hold an election to decide to create a new school district.  The election permitted only the proposed school district's residents to vote.  The appellate court overturned the district court's decision to permit the city to intervene, holding that the city "does not have rights protected under the Fourteenth Amendment." *Id.* at 1183.  *See also S. Macomb Disposal Auth*, 790 F.2d 500, 505 ("[T]he Fourteenth Amendment simply does not prescribe guidelines and impose restrictions upon one political subdivision vis-a-vis another political subdivision. The relationship between the entities is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply."); *Hous. Auth. of Kaw Tribe of Indians of Oklahoma v. City of Ponca City*, 952 F.2d 1183, 1190 (10th Cir. 1991) ("[A] political subdivision of a state may not challenge the validity of an act by a fellow political subdivision under the Fourteenth Amendment unless such an action is expressly authorized by the creating state.").  These cases may cast doubt on the HCDE's authority to sue the Harris County Defendants under § 1983 for violating voters' equal protection rights. As noted, the parties do not pursue this issue.

[4] In the Fifth Circuit, claims under the Fourteenth Amendment must be brought under 42 U.S.C. § 1983 or other statutes that create express causes of action for constitutional violations. *See, e.g.*, *Mitchell v. City of Houston*, Tex., 57 F. Appx 211 (5th Cir. 2003).  Section 1983 is not a source of substantive rights but a means for enforcing rights under the United States Constitution and other federal statutes.  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).

Parties move to dismiss on the basis that the HCDE has no cognizable claim against Harris County and its officials (sued in their official capacity) that constitutionally protected rights were violated.

The HCDE argues that the Harris County Defendants' failure to follow the *Rodriguez order* to use the interim map for the 2012 primary for the precinct-based HCDE trustee positions is a sufficient basis to allege a cognizable one-person, one-vote violation in this case. But no facts have been alleged or identified that would tend to support an inference that Harris County's actions were anything more than an inadvertent mistake. The HCDE has avoided ascribing any improper motive to Harris County's use of the 2001 map in the 2012 primary election for the HCDE Position 4 and Position 6 trustees. (Docket Entry No. 23. at 3, n. 3 (Harris County "takes no position as to whether County officials knowingly violated the [*Rodriguez*] Order or merely erred in updating the boundaries as alleged.")). The HCDE alleges a single instance of a failure to use the correct map lines in a primary election, possibly affecting the outcome of one race. The correct map was otherwise used. Such an allegation of isolated, inadvertent error is insufficient to state a Fourteenth Amendment one-person, one-vote claim.[5] "Intent is an essential element of a Fourteenth Amendment claim." *Chen v. City of Houston*, 9 F. Supp. 2d 745, 753 (S.D. Tex. 1998), *aff'd*, 206 F.3d 502 (5th Cir. 2000) (citing *Washington v. Davis,* 426 U.S. 229 (1976)).

In *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980), the Fifth Circuit considered a claim by an unsuccessful school-board candidate that he was entitled to relief under § 1983 because the election votes were improperly counted. As a result, his opponent, who garnered fewer votes, was

---

[5] For similar reasons, the HCDE's equal protection claim also fails to meet § 1983's "policy or custom" requirement. "[M]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

declared the winner.  The claim was, as here, based on an isolated event arising from "entirely innocent human error."  *Id*. at 452.  The appellate court reversed the district court's finding of jurisdiction and its grant of relief.  The appellate court held that such an isolated, innocent act that results in the loss of some votes, even when it results from "unlawful administration by state officers" of state law and the unequal treatment of voters "entitled to be treated alike," and even when it affects the outcome, is "not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Id*. at 453.  The Fifth Circuit explained that "[i]f every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss." *Id*.

The appellate court concluded that, because the complaint alleged only an "inadvertent error," and did not allege an intent to violate constitutional rights or a deliberate deprivation of constitutional rights, the error did not, as a matter of law, constitute a denial of equal protection of the laws.  *Id*. at 454.  The Fifth Circuit noted that the plaintiffs had a remedy, the state's procedures for election challenges.  *Id*.; *see also Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) ("Because we have upheld the district court's findings that no racially discriminatory purpose or effect was present here, we are left with an "ordinary dispute over the counting and marking of ballots."); *Shannon v. Jacobowitz*, 394 F.3d 90, 97 (2d Cir. 2005) ("Because no conduct is alleged that would indicate an intentional deprivation of the right to vote, we find no cognizable federal due process claim."); *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992) ("Principles of federalism limit the power of federal courts to intervene in state elections."); *Bodine v. Elkhart County Election*

*Bd.*, 788 F.2d 1270, 1273 (7th Cir. 1986) (holding that the Fourteenth Amendment imposes an intent requirement).

In this case, the HCDE does not allege facts showing that the Harris County Defendants intentionally failed to follow the court-ordered interim map, intentionally sent the wrong ballots to the affected precincts, or intentionally sought to deprive any voter of constitutionally protected voting rights.  To the contrary, the HCDE not only fails to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (citation omitted), but it has also admitted its inability to allege facts that would give rise to a cognizable claim.  The HCDE's § 1983 claim is dismissed, without leave to amend because the record reveals that it would be futile.[6]

### D.     The Section 5 Claim

In its original complaint, the HCDE alleged that "Harris County did not obtain preclearance under Section 5 of the Voting Rights Act for the court-ordered interim commissioner precinct boundary lines for the July 31, 2012 run-off election."  (Docket Entry No. 1 at 5).  The HCDE removed this language from its second amended complaint.  The second amended complaint asks this court to order a special election and "order Harris County to seek preclearance under Section 5 of the Voting Rights Act of 1965 regarding use of the court-ordered interim commissioner precinct boundary lines and the voting procedures set forth in this Court's Order."  (Docket Entry No. 12 at 10).  Because this court is not entering an order requiring a special election using the interim map and the voting procedures the HCDE sought, there is no Section 5-based claim or request for relief.

---

[6]  Given the absence of any federal constitutional claim by the HCDE and any federal-law basis for this court to intervene in the general election for the Position 6 trustee, there is no need to address the separate argument raised by the political parties that to grant the relief the HCDE seeks would infringe the political parties' constitutional right to select their own party nominees.

The motions to dismiss the HCDE's suit are granted.[7]

## III. The HCDE Has Failed to Show that it is Entitled to a Preliminary Injunction

In addition to the grounds for dismissal analyzed above, the HCDE cannot meet the requirements for the injunction it requests. The HCDE asks this court to issue an injunction to "order a special election to be held in conjunction with the general election in November 2012 for HCDE trustee Positions 4 and 6, with candidates from all parties running against one another, using the commissioner precinct boundaries ordered in *Rodriguez* on November 19 and 23, 2011." (Docket Entry No. 7 at 11). To obtain a preliminary injunction, the HCDE must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an 'extraordinary remedy' and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Planned Parenthood of Houston & S.E. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (internal quotation marks and citation omitted).

---

[7] The Democratic Party's motion to dismiss on the basis of mootness is both moot as a result of this ruling and unpersuasive. The Democratic Party asserts that the suit is moot because it exercised its authority under Texas Election Code §§ 145.036 and 145.037 to appoint a replacement nominee in place of a candidate who has been declared ineligible. On August 25, after this suit was filed, but within the 74-day period, the Democratic Party selected Erica Lee as the replacement for . . . herself. (Docket Entry No. 27). The Texas Election Code limits the authority to select a replacement nominee to circumstances in which the original candidate "withdraws, dies, or is declared ineligible on or before the 74th day before election day." TEX. ELEC. CODE § 145.035. Lee has not withdrawn, she is alive, and her eligibility is not the issue. Even if eligibility was the issue, the Code requires a final judicial judgment of ineligibility, *Id.* § 145.004, and the selection of a replacement nominee within 74 days of the scheduled election. The former has not occurred and the latter was too late. The Democratic Party's motion to dismiss on the basis of mootness is denied.

For the reasons analyzed above, the HCDE is unable to show a substantial likelihood of success on the merits. And the balance of equities is squarely against the HCDE. The HCDE has failed to show irreparable harm if an injunction does not issue. There was one primary election that was *possibly* affected by the use of the incorrect boundary lines. Any impact is speculative. The most any party can say is that there was a mathematical possibility that, had the interim map the court ordered in *Rodriguez* been used as it should have been, the outcome of the Democratic primary election for Position 6 trustee *might* have been different. That is, there was a mathematical possibility that Johnson would have obtained a majority, avoiding the need for the runoff with Lee. But in the July 31 runoff, Johnson had a second opportunity to garner a majority of Democratic votes, which he failed to accomplish by a wide margin, further demonstrating that the asserted impact of using the wrong map is speculative. The error was not repeated; the runoff was, and the general election will be, conducted under the correct map.

The harm that HCDE seeks to prevent — avoiding future questions to its decisions based on challenges to the board composition — is also speculative. And an alternative remedy is available that, as the Fifth Circuit noted in *Gamza*, is better suited to the nature of the claim at issue here. That remedy is a state-court election challenge. The availability of that remedy further undercuts the presence of irreparable harm to the HCDE if the relief it seeks is not granted.

Finally, the record shows that issuing the injunction the HCDE seeks will harm the defendants and disserve the public interest. The HCDE's proposed remedy of modifying the general election in the Position 6 race may well affect the outcome of that race. The Democratic vote will likely be split among three candidates, which could result in a victory for the Republican candidate in a district where, as the briefs indicate, such an outcome is otherwise unlikely. The prospect that

the requested relief would have such a political effect raises significant concerns.

The HCDE fails to show that it is likely to succeed on the merits of its claims, and the balance of equities counsels strongly against granting its application for a preliminary injunction.

## V.   Conclusion

The Republican Party's motion to intervene, (Docket Entry No. 18), is granted.  Erica Lee's motion to intervene, (Docket Entry No. 17), is granted.  Joseph Ballard's motion to intervene, (Docket Entry No. 25), is denied.  The motions to dismiss filed by the Harris County Defendants and the Republican and Democratic Parties, (Docket Entry No. 13, 14, and 19), are granted.  The Democratic Party's motion to dismiss for mootness, (Docket Entry No. 27), is denied.  The HCDE's application for a preliminary injunction, (Docket Entry No. 7), is denied.

This case is dismissed by separate order.

SIGNED on September 6, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge